## NOBLE and Others *v.* ENOS and Another.

Under the laws of Indiana, a married woman may devise her separate property, and it is not necessary that the husband should concur in, or be in any way a party to, the will of his wife disposing of her separate real estate.

As to what constitutes a correct instruction from the Court to the jury, in a case in which the validity of a will is attacked, on the ground that it was procured by fraud, duress, or undue influence, the reader is referred to the opinion at length.

Where a party requests, at the proper time, that the jury shall be required to return answers to special interrogatories, it is the duty of the Court to propound to them such interrogatories as shall be applicable to, and embrace the issues and legitimate evidence in the cause, so as not to withdraw from their consideration any part of either.

If the answers of the jury to any such interrogatories are not appropriately responsive thereto, there should be a motion in the Court below to make them more direct, or, in some other proper mode, to remedy such defect, or such errors will not be available in this Court.

Noble and Others *v.* Enos and Another.

It is the imperative duty of the Court, at the request of either party, to direct the jury to find a special verdict.

But, if such request is made, the party can not at the same time require that interrogatories shall be propounded to, and answered by, the jury, in the event of a general verdict being returned; and if he make the latter request, the demand for a special verdict will be thereby waived.

In an action to set aside the will of a married woman, because it was procured by fraud, duress, or undue influence, it is error to admit testimony designed to prove that a part of the property disposed of by the will was purchased and given to the testatrix by her husband, because the will could only operate upon such property as belonged to the testatrix, both in fact and law.

APPEAL from the *Franklin* Circuit Court.

HANNA, J.—*Emily H. Noble,* wife of *James Noble,* died, leaving her husband and two children, on the 26th day of October, 1859, and an instrument purporting to be a will. This was a proceeding to test the validity of said instrument, as a will.

It is alleged that she, being a married woman, had no power to make a will; and if she had, that the same must be exercised with the consent of her husband, as real estate was included. That said will was obtained through coercion, compulsion, and the undue influence of defendants, etc.

It will be observed that the instrument was executed after the enactment of the statute of 1859, (Acts, 1859, p. 245,) which professed to explain the intention of the legislature in the enactment of 1852. 2 R. S., p. 308, chap. 2, prescribing "who may make a will," etc., namely, "all persons, except infants, and persons of unsound mind," etc. The act of 1859 declares, that it was the intention, by said act of 1852, to confer upon married women the right to execute wills, and that Courts should so construe said act. Passing over, for the present, the said act, and disregarding the questionable taste of several passages in it, we will

consider that of 1852 alone, and in connection with previous legislation upon the same subject.

The persons that may devise are named, that is, "all persons." The statute does not stop at declaring that all persons shall have that power, but proceeds to enumerate the exceptions, to-wit: "infants, and persons of unsound mind." Now, as there are other provisions in the code, enacted by the same law-makers, authorizing married women to hold property, both real and personal, (1 R. S., p. 321,) separate from their husbands, and to sue alone in matters concerning the same, (2 *Id.* 28,) the question naturally arises, whether the term "all persons" will include them? We need not pause to determine the effect of such a statute, declaring broadly that "all persons" shall have this power, for it is only necessary to consider this in connection with the exceptions. Can we, in view of the statutes quoted, supply or presume an exception not named, because, in some matters, a disability still exists, and, in this matter, formerly existed? In other words, shall we declare that persons, other than those named in said statute as being disqualified, are laboring under disability?

Here is a broad legislative declaration of the possession of a right, or of the intention of that body to confer such right; it matters not, for the purpose of the argument, which; and the same legislative act also contains, or expresses, a particular intention, incompatible with the declared possession of such right, or intention to confer it. This latter should be treated as an exception, and defeats the general legislation as to the persons designated in said exception. More than that, does it not preclude any construction of said statute by which persons, other than those designated in said exception, shall be excluded from the exercise of the power declared to exist, or conferred by the general terms of said act? *R.* v. *Archbishop of Armagh,* 8 Mod. 8. *Churchill* v. *Crease,* 5 Bing. 180. *Torrington*

v. *Hargraves*, *Id.* 492. Sedg. on Constitution and Statute Law, p. 39.

In looking to the question, whether such is the proper interpretation of said act, we are, perhaps, at liberty to advert to the disabilities of married women, in respect to making a will, contained in the previously existing laws. *People* v. *Utica Ins. Co.*, 15 Johns. 358, 80. Bl. Com., vol. 1, p. 87. 7 Conn. 457. The code of 1843, p. 485, contained an act that "All persons, except married women, infants, idiots, and persons of unsound mind, may devise," etc. The disability as to married women is not, in express words, carried forward in the legislation of 1852, and why not? In searching for an answer to that question, we find that the disability of the wife was, by the same law-makers, by contemporaneous legislation, removed, so as to enable her to hold and control property, title to which should be acquired in certain designated modes. What should become of that separate property at her death? Was it not competent for the law-makers who gave her control of it during her life, also to authorize her to dispose of it, or any part of it, after her death?

But we need not pursue this investigation, based alone upon the statute or statutes of 1852, and those preceding it; for the act of 1852, prescribing "who may make a will," has since, as we have mentioned, received the exposition of a subsequent legislative body, a successor of the one that enacted it. Now, while it is true, that the power of expounding the law belongs to the judiciary alone, *Municipality No. I* v. *Wheeler*, 10 Louis., p. 747, and while it is, perhaps, in most cases, also true, that an act declaring the true intent of a previous act does not control the judiciary in deciding upon the true construction of the first act; yet we suppose it is within the power of legitimate legislation to declare the meaning of the act in reference to cases arising after the said second act shall take effect. This

is termed legislative exposition, by subsequent legislative bodies. Sedg., p. 252.

This will was made after the enactment of 1859, and was within the power of the testatrix, as to such parts of her property as she was authorized to dispose of in that way.

We do not think there is any thing in the objection, that the will was made in the absence of the husband of the testatrix. It is not such a conveyance as is contemplated by the act of 1852, p. 1; R. S., p. 321, forbidding conveyances and incumbrances, etc. *Mason* v. *Simmes*, at this term.

As to the third point, concerning the validity of the will, arising out of matters of fact connected with its execution, it may be said, generally, that the evidence as to the questions of fact involved, is very conflicting; and upon questions arising out of the weight or value of that evidence alone, we may not disturb the determination arrived at, if the legal principles involved in the controversy were correctly ruled by the Court.

This leads to the examination of the rulings on the trial.

The statute is, that the validity of a will may be contested on account of the " unsoundness of mind of the testator, the undue execution of the will, that the same was executed under duress, or was obtained by fraud, or any other valid objection to its validity." 2 R. S. 318.

After recitals in the complaint, of the possession of property and absence of the husband of said testatrix, and the extreme youth of the children, the sickness and feebleness, mental and physical, of said testatrix, the fact that the defendants, *Enos* and wife, resided with her, etc., it is charged, that the defendants, with the intention to cheat and defraud plaintiffs, and to obtain a portion of said estate, etc., persuaded and coerced the said *Emily*, while thus weak and feeble, and, through fear and threats, induced her to make a will, and to bequeath to said *Magdalene Enos* large sums," etc.

*Answer.* Denial, and affirmation of the validity of said will. Jury trial, in Common Pleas, verdict and judgment against the validity of the will. Appeal to Circuit Court, jury trial, verdict and judgment sustaining the will.

The instructions asked by the appellants were refused. The first attempted to define fraud and its consequences, and the second was as follows:

" So if one party exercises an undue influence over another, by this phrase, *undue influence,* is not meant that influence which is obtained by modest persuasion or arguments addressed to the understanding, or by mere appeals to the affections, but it means an influence obtained either by flattery, or by excessive importunity, or by threats, or in some other mode by which a dominion or control is acquired over the mind or will of one person by another, thereby destroying his free agency, and constraining or inducing him to do, against his free will, what he is unable to refuse."

The instruction given, bearing upon this point, is as follows:

" The plaintiffs charge, that the will named in their complaint was obtained by duress or by fraud. Should you find that the will was made under duress or fraud, you should find for the plaintiff. Duress means, in a case of this kind, a threat to take the life or limb of the testatrix, or do her some great bodily harm. Fraud means, that some deceit, trick, deception, or artifice was perpetrated upon the credulity of the testatrix, which deceived her, and induced her to make her will contrary to her real instructions."

It is insisted, that the first part of the charge given limited the investigation by the jury to acts of duress and fraud alone, and was calculated to mislead them as to their right, under the statute, upon the issues and the evidence, to inquire as to whether the execution of the will was procured by the defendants, by any other undue means; and that, therefore, the part of the charge, asked and refused, and above quoted, should have been given.

It will be observed that the language used in the charge given, is nearer that used in the statute than that employed by plaintiffs in alleging the means used to procure the execution of the will; which is, that defendants persuaded and coerced, etc., and through fear and threats, induced, etc. It will be further observed, that the charge proceeds to define what the Court meant by the words fraud and duress. Do either of those terms, as used and explained by the Court, include acts of undue persuasion or coercion, if such were proved, by which the testatrix was, through fear and threats, induced to execute the will?

For instance, there was evidence tending to show that the testatrix was the illegitimate daughter of the defendant, Mrs. Enos, and that she locked the testatrix "in a room, and made her swear, on a Bible, that she would not let Noble have any of her money;" and that the so-called "oath greatly troubled her." Would the jury consider that evidence under the charge as given?

Duress, as defined by law writers, means an actual or threatened violence, or restraint of a man's person, contrary to law, to compel him to enter into a contract, or to discharge one. Bouv. L. Dict. Blackstone says there may be two kinds of duress: that which is consequent upon a loss of liberty by imprisonment, or that which operates upon the mind so as to cause fear of loss of life, or limb, or fear of mayhem. 1 Bl. Com. 131–6. Four instances are enumerated by Lord Coke, in which a man may avoid his acts. 1st. When brought about by fear of loss of life. 2d. Of member. 3d. Of mayhem. 4th. Of imprisonment.

We need not critically examine and compare the definition thus given by law writers, and that given in this case by the Court, to see if they agree, but taking that given by the Court as controlling, the question is: Whether the means charged in the complaint to have been used are included in it? As it will not vitiate a will to show that it

Noble and Others *v.* Enos and Another.

was procured by honest persuasion, (*O'Neall* v. *Farr*, 1 Rich. S. C. 80. 1 B. Mon. 351. 17 Geor. 364. 17 Barb. 236) but would to procure it by coercion; and, as these are the means charged to have been used to such a degree as to induce the testatrix, through fear and threats, to execute the will, it seems to us, from the construction of the sentence, that the fear is charged as the result of the persuasion, and the coercion as following the threats. Fear, in reference to crimes, is said to be dread, consciousness of approaching danger. 2 Burr. 71–90. 2 East, P. C. 718. By Webster it is defined to be " an apprehension of danger; to feel anxiety on account of some expected evil."

In view of the pleadings and evidence in this case, we are of opinion that the term duress, as limited by the Court, would not sufficiently present to the jury the questions arising in the case.

Fraud is said to be any trick, deception, or artifice employed by one person to circumvent, cheat, or deceive, so as to induce another to fall into an error, or to detain him in it, etc. Story's Eq. Jur., sec. 186. Bouv. L. Dict.

It has been held, that there may be great and overruling importunity, and undue influence, without fraud, which ought to have the effect to avoid a will. *Calvert* v. *Davis,* 5 Gill and Johns. 301. 1 Jar. on Wills, 39.

It is manifest that this term will not include the acts complained of. It has been held, that there is a manifest distinction between control and undue influence. "Control is more easily capable of a description approaching to a definition, because it necessarily imparts something of the nature of duress or fear." *Stulz* v. *Schaeffle,* 18 Eng. L. and E. 579.

We conclude, therefore, that the instruction given was wrong; but whether that asked was right or not, we have not strictly examined; but would feel inclined to think, from the very slight consideration we have given it, that some of the terms used in it would not necessarily imply

that a resort had been had to undue means to obtain the execution of the will. Jar. on Wills, 39, as to flattery.

The appellants asked the Court to instruct as follows, which was refused:

"The plaintiffs ask the Court to require the jury to find specially upon all the issues of fact; and should they render a general verdict, the jury will find upon the following special questions:

"1st. Was said will procured by the fraud of the defendants, or either of them?

"2d. Was said will procured by undue influence exerted over the said testatrix by defendants, or either of them?

"3d. Was said will procured by threats made use of by the defendants, or either of them?

"4th. Was said will procured by coercion, or compulsion of defendants, or either of them?

"5th. Was said will executed under duress?"

The Court, in lieu thereof, required the jury to answer the following interrogatories. The answers are also set forth:

"1st. Was said will made by the fraud of the defendants, or either of them?" "No: not at the time of making the will."

"2d. Was Mrs. Noble under duress when she executed the will in controversy?" "No."

"We, the jury, find for the defendants."

It will be observed that the phraseology of the first and fifth questions, of those asked, is somewhat different from that employed in those used, and which are directed to the same points of inquiry.

It is contended, by the appellants, that dropping out the word "procured" from the first question, and substituting the word "made," was calculated to mislead the jury; and that the language employed in the second question propounded, was calculated to, and did so mislead the jury as

Noble and Others *v.* Enos and Another.

to confine them to the inquiry as to duress used at the precise time of the execution of the will.

There is not such an essential difference between the first interrogatory asked, and that propounded, as would make the ruling error in refusing the one and giving the other. The jury must have arrived at substantially the same conclusion as to either.

We are apprehensive that the second question propounded was of such a character as would mislead the jury, in this, that they would consider themselves bound down thereby to too narrow a margin in their inquiry as to whether the testatrix was under duress. See 5 Gill and Johns. 303. 20 Penn. State Rep. 329.

It is insisted that the precise points covered by the inquiries numbered two, three, and four are not included in those propounded. The great volume of evidence given by each party was directed to these questions. Should they, in addition to those presented, have been propounded in that form? This question is anticipated in what has been already said in reference to the instruction to the jury. If that instruction was wrong—and we have said it was—then the ruling in refusing these interrogatories was also wrong.

It is urged that the answer of the jury to the first question propounded by the Court is not responsive thereto. No motion was made to require them to make it more direct, nor to set it aside. This should have been done in some form.

It will be recollected that the appellants asked the Court to require the jury to find specially upon all the issues of fact; and it is now urged that the failure to do so was error. The Code, 2d vol., p. 114, provides that verdicts are either general or special; and that a special verdict is that by which the jury find the facts only; that the jury may, unless otherwise directed by the Court, find either a general or special verdict; "but the Court shall, at the request of either

party, direct them to give a special verdict, in writing, upon all or any of the issues." In addition, there is also the provision for special interrogatories.

This statute appears to be imperative, that it is the duty of the Court, at the request of either party, to direct the jury to find a special verdict. *Bird* v. *Lanius*, 7 Ind., p. 621. But if such a request is made, the party can not also accompany it with a requisition that interrogatories shall be propounded, to be answered in the event of a general verdict being returned; or, if he does, it operates as a waiver of the request that a special verdict shall be found.

A question is raised upon the refusal to admit evidence. It is averred, in the complaint, that the real estate, and part of the personal, included in the will, were purchased by the husband, with his own money, and proof was offered to sustain that allegation, and refused. Was this error? We can not think it was. If it was purchased and given to her by her husband, she could so will it, as no facts are alleged, if any could be in any case, showing that there was any trust. Nor are any facts shown that would prevent such gift. If the property did not belong to the testatrix, she could confer no title by the will. A case might present itself of so gross a character, in this respect, as to evidence unsoundness of mind; but we do not understand the evidence to have been offered to establish such fact in this case.

*Per Curiam.*—The judgment is reversed. Cause remanded.

*Wilson Morrow, Robert M. Goodwin,* and *John M. Johnston,* for the appellants.

*George Holland* and *C. C. Binkley,* for the appellees.